UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
|    MARCO A. VILLCA | ) | Case No. 09-16569-SSM |
|    ZULEMA VILLCA | ) | Chapter 13 |
| | ) | |
|               Debtors | ) | |

**MEMORANDUM OPINION**

Before the court is the objection of Thomas P. Gorman, standing chapter 13 trustee, to confirmation of the plan filed by the debtors on September 17, 2009. A hearing was held on October 28, 2009, at which the debtors were present by counsel and the chapter 13 trustee was present in person. The issue is whether the plan—which provides for a "strip-off" of a wholly unsecured second deed of trust against the debtors' residence while paying the trustee over 36 months less than the amount they paid their attorney up-front to file the case—should be denied confirmation for lack of good faith.

Background

Marco A. Villca is a store manager. His wife, Zulema Villca, is a teacher. They have one young child and earn a total of $6,833 per month from their employment and a paper route. On August 13, 2009, they filed a voluntary petition in this court for adjustment of their debts under chapter 13 of the Bankruptcy Code. The disclosure of compensation filed by their attorney reports that they paid him $4,500 up front to file the case. On their schedules the debtors list unsecured debts in the total amount of $11,815, combined take-home pay of $4,523 a month, and living expenses of $4,413 a month, leaving a surplus of $110 with which to fund a

plan. On their "means test" form (Form B22C) they reported current monthly income (CMI) of $6,622, which, on an annualized basis, is above the $73,191 state-wide median for a family of three. They claimed means-test deductions and adjustments—none of which the trustee has challenged—in the amount of $6,821 a month, for a calculated disposable income of <u>negative</u> $199.

The plan before the court was filed on September 17, 2009. It requires payment to the chapter 13 trustee of $110 per month for 36 months. From the payments received, the trustee, after deduction of his statutory 10% commission, would pay allowed unsecured claims *pro rata*, with the estimated dividend being 21 cents on the dollar.[1] The debtors would maintain regular monthly payments on two automobiles and on the first deed of trust against their residence held by Chase Manhattan Mortgage, but an adversary proceeding would be filed to "strip-off" a second deed of trust in favor of HSBC Mortgage Services, Inc., as wholly unsecured.[2]

Discussion

As filed, the trustee's objection to confirmation asserts only that the plan is not proposed in good faith because "[t]he attorney fees in the amount of $4,823.00 is higher than the total

---

[1] The actual dividend, if the second mortgage holder files a proof of claim, would be dramatically less than advertised to creditors in the plan. The $72,436 due on the deed of trust would be an addition to the $11,815 in scheduled unsecured claims, for a total of $84,251. The total being paid into the plan is $3,960. After deduction of the trustee's commission, $3,564 would remain to pay $84,251 in unsecured claims, which equates to a dividend of only 4 cents on the dollar.

[2] The adversary proceeding has not yet been filed, but the schedules reflect a current market value for the property of $220,000, with the balance on the first deed of trust being $301,458, and the balance on the second deed of trust being $72,436.

funding of the Plan which is $3,960.00."[3] At the hearing, however, the trustee elaborated on his position and argued that the plan, which provided only a nominal and essentially meaningless distribution to unsecured creditors, had no purpose other than to provide a vehicle for stripping off the second deed of trust. Because that relief would not be available to the debtors in a chapter 7 case under the Supreme Court's ruling in *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), and because the unsecured creditors are effectively receiving nothing, the trustee asserts that the plan is essentially a sham—a chapter 7 case masquerading as a chapter 13 case in order to obtain relief that is available in chapter 13 but not chapter 7.

I.

Chapter 13 allows a financially-distressed debtor to restructure and repay debts under court supervision and court protection. Although priority claims and secured claims must be paid in full, the court may confirm a plan that provides for less than full payment of unsecured claims if the plan is proposed in good faith, creditors will receive at least as much as they would in a chapter 7 liquidation, and the debtor pays into the plan his or her projected disposable income for the applicable commitment period, which is three years for debtors with a household income below the state-wide median for a family of the same size, or five years for a debtor with household income at or above the state-wide median. §§ 1325(a)(3),(4),(b)(1),(4), Bankruptcy Code.

---

[3] The actual attorneys fees appear to be $4,500, with the balance representing filing fees and other costs. The trustee has not challenged the reasonableness of the fees as such, but only in relation to the plan payments. The court notes, nevertheless, that $4,500 is distinctly at the high end of what attorneys generally charge for chapter 13 cases in the Washington metropolitan area.

The trustee's objection in this case challenges the debtors' good faith in proposing a plan that provides no meaningful payment to creditors and is simply a vehicle for effecting a strip-off of the second deed of trust against their residence. The general rule is that a nominally-secured debt is treated as secured in bankruptcy only to the extent of the value of the collateral, and that a lien is void to the extent it purports to secure a claim that is not an allowed secured claim. §§ 506(a) and (d), Bankruptcy Code. The Supreme Court, however, has ruled that in a chapter 7 case the debtor cannot strip down a secured claim to the value of the collateral. *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). In chapter 13, by contrast, most courts, including the district court for this district, have held that a mortgage debt that is not supported by <u>any</u> value—such as a second deed of trust against property that is worth less than the amount owed on the first deed of trust—can be stripped-off, notwithstanding the general prohibition against modification of claims secured by a debtor's principal residence. *See Wright v. Commercial Credit Corp. (In re Wright)*, 178 B.R. 703 (E.D. Va. 1995), *appeal dismissed*, 77 F.3d 472 (4th Cir. 1996); *In re Dean*, 319 B.R. 474, 476 (Bankr. E.D. Va. 2004); *Johnson v. Asset Mgt. Group, LLC*, 226 B.R. 364 (D. Md. 1998); *Flowers v. FirstPlus Fin., Inc. (In re Flowers)*, 1999 WL 118022 (Bankr. E.D. Va. 1999) (discussing issue and collecting cases).

The Fourth Circuit has explained that there is no requirement of "substantial" payment in chapter 13, and that totality of the circumstances is the test for good faith (or lack of it) under § 1325(a)(3) when a debtor proposes no or only minimal payment of claims. *Deans v. O'Donnell*, 692 F.2d 968 (4th Cir. 1982). Suggested factors to be considered include "the percentage of proposed repayment, . . . the debtor's financial situation, the period of time payment will be made, the debtor's employment history and prospects, the nature and amount of

unsecured claims, the debtor's past bankruptcy filings, the debtor's honesty in representing facts, and any unusual or exceptional problems facing the particular debtor." *Id*. at 972. Also relevant, however, is whether the debtor is attempting to obtain relief under chapter 13 that could not be obtained under chapter 7. *See Neufeld v. Freeman*, 794 F.2d 149 (4th Cir. 1986) (holding that intent to discharge a debt in chapter 13 that would be nondischargeable in chapter 7 is not by itself a sufficient basis for finding bad fath but is a relevant factor to be considered in the good faith inquiry).

II.

The court agrees with counsel for the debtors that a plan does not lack good faith simply because the debtors are paying their attorney more than they are paying their creditors. On the other hand, the disproportion does raise the question of why, if the debtors have the financial ability to pay their attorney $4,500 up front, they are able to pay their creditors only 88% of that amount over the subsequent three years. It also raises the question of why these above-median income debtors have chosen to make payments only over three years. Regardless of whether the five-year commitment period applicable to above-median income debtors under § 1328(b)(4), Bankruptcy Code, is a temporal requirement or simply a multiplier[4]—an issue the trustee has not raised in this case, although he has in others— there is no apparent reason why, if they can afford to pay $110 a month—which after all amounts to only 9/10th of one percent of their monthly

---

[4] *See In re Hylton*, 374 B.R. 579 (Bankr. W.D. Va. 2007) (holding that confirmation of plan proposed by above-median income debtors would be denied when term of plan was less than 60 months, because "applicable commitment period" is a temporal requirement and not simply a multiplier).

5

Case 09-16569-BFK    Doc 26    Filed 11/05/09    Entered 11/05/09 10:55:21    Desc Main
                          Document      Page 6 of 7

gross income—for three years, the debtors cannot make payments for an additional two years and thus provide a more meaningful recovery to their creditors.

In summary, although the court does not find that either the ratio of the attorneys fees to the plan payment or the use of chapter 13 to obtain relief not available in chapter 7, standing alone, constitutes bad faith, they are appropriate factors to be considered in applying the totality of the circumstances test. Coupled, as they are here, with a minimal, even meaningless, dividend on unsecured claims, and a plan period that is less than the statutory commitment period, the court cannot find that the plan is proposed in good faith unless the debtors agree to extend the plan period to five years.

A separate order will be entered sustaining the trustee's objection and denying confirmation unless the debtors increase the term of their plan—without reduction in the amount of their monthly payment—to 60 months.

Date: _____        _____
                                    Stephen S. Mitchell
Alexandria, Virginia                United States Bankruptcy Judge

Copies to:

Robert R. Weed, Esquire
Law Offices of Robert Weed
7900 Sudley Road, Suite 409
Manassas, VA 20109
Counsel for the debtors

Thomas P. Gorman, Esquire
300 N. Washington St., Suite 400
Alexandria, VA 22314
Chapter 13 Trustee

Marco A. Villca
Zulema Villca
6819 Avalon Isle Way
Gainesville, VA 20155
Debtors